ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. LOUIS BILLINGS.

### No. 254.

1. RAILROADS — *Cattle-guards — Duty of Company.* Section 1259, General Statutes of 1889 (Gen. Stat. 1897, ch. 70, § 18), imposes the duty upon a railroad company to build cattle-guards where necessary whenever its line of railroad passes through a fenced field, whether such field is enclosed before or after such railroad is constructed.

2. ——— *Character of Damages. C. K. & N. Rly. Co. v. Behney*, 48 Kan. 47, followed, as to character of damages recoverable.

3. SPECIAL FINDINGS — *Conflict, When Fatal.* Where the general verdict is supported by sufficient evidence, and has received the approval of the trial court, a conflict between the special findings and such verdict must clearly appear to be material, to warrant the granting of a new trial.

Error from Montgomery district court; J. D. Mc-Cue, Judge. Opinion filed February 15, 1898. Affirmed.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiff in error.

*O. P. Ergenbright,* and *A. B. Clark,* for defendant in error.

The opinion of the court was delivered by

MILTON, J. : On the trial of this action, at the 1893 term of the Montgomery district court, Louis Billings, as plaintiff, recovered a judgment in the sum of $346, against plaintiff in error as defendant, based on a verdict of a jury, as damages on account of the failure of the defendant company to construct cattle-guards at three points where its line of railroad runs through three contiguous tracts of land of said plaintiff, one point being a highway, and all of said tracts being enclosed by fences. Defendant's motion for judgment upon the special findings and its motion for a new trial having been overruled, the case is brought here for review.

Plaintiff owned 140 head of cattle, which he endeavored to keep within his enclosed field to be pastured and fed, but very frequently they escaped through the openings where the cattle-guards should have been placed, and had to be recovered and returned by Billings or some one in his employ. These persons also put forth efforts at different times to keep the cattle away from the said openings in the fence, to prevent their escaping. On account of these items plaintiff alleged his damage to be $500. He also sought to recover $200 because of the depreciation in the value of his cattle caused by their being driven

A. T. & S. F. Rld. Co. v. Billings.

practically every day from November 15, 1891, to May, 1892, as a result of their escaping from the enclosure; $150 for the value of eleven of his cattle that had died from being excessively driven, and $300 on account of increased feeding made necessary by the foregoing — all alleged to be in consequence of the failure of the company to build the cattle-guards.

The jury found that Billings was entitled to recover for 173 days' work of a man and horse in driving the cattle back to and keeping them within the enclosure, and that the proper amount of the recovery was $346. Nothing was allowed for the other items, although the court had covered all the said items in its instructions. The evidence showed that by making an outlay of $104 for a fence along the right of way, and by losing the use of thirty-seven acres of pasturage, worth fifty cents an acre, Billings could have kept the cattle from escaping and thus have avoided damage. The court instructed the jury concerning this point, but they found that, while the damage might have been prevented in that way, Billings was not negligent in failing to build the fence. The last part of this finding has some support in the evidence. It was proven that in the summer of 1891 Billings informed the section foreman who had charge of the track which extended over the premises in question that he expected to enclose the same at an early date and requested to have cattle-guards built at certain designated points. The foreman reported the conversation and request to the company's roadmaster, who, with the division superintendent, came on a train to the station nearest the land some time afterwards, and, meeting the section foreman, asked him to go with them on the train and show them where the cattle-guards would be needed. The foreman complied with this request. Thereafter

26—7 KAN. APP.

the division superintendent wrote the following letter to Billings :

"CHANUTE, KAN., November 20, 1891.

"*Louis Billings, Cherryvale, Kan.:* DEAR SIR — In replying to yours of November 17, in relation to cattle-guards, fencing, etc., through your land, would say that correspondence on this subject has been referred to me, and I have taken the matter up with our general superintendent, with a view of either fencing through your land, or building cattle-guards, as you request, and I believe it will be better for the company to build the fences than to put in cattle-guards, as you could at any time after we build the cattle-guards demand the fences and we are obliged to build them, or you could do the same and collect from the company. But in taking this matter up, I wish to say to you, that if we build the fence it will be necessary for us to build it on the line of our right of way, which is 200 feet wide through your farm.

"If you do not prefer for us to build this fence, I would be glad to have you say so. Of course the matter rests entirely with you. I had hoped to have seen you, but have not done so. Yours truly,

"J. L. BARNES, *Superintendent.*"

As the company introduced no evidence, and as it appears that it fenced its right of way through the Billings land some time in the year 1892 without any further notice from Billings, we think it clear that the railroad company had sufficient knowledge of the fact that the land was fenced to impose upon it the duty of building the cattle-guards before the end of the year 1891. Paragraph 1260 of the General Statutes of 1889 (Gen. Stat. 1897, ch. 70, § 18) provides that in an action to recover damages for failure to build cattle-guards, in order to enable the injured party to recover all damages he has sustained by reason of such failure, it shall only be necessary for him to prove neglect or refusal on the part of the company to con-

struct such cattle-guards. Neglect, as used in this section, certainly implies previous knowledge; not necessarily notice of any particular kind. We think neglect in this regard was sufficiently proven.

The principal question discussed by counsel for the company in their brief and orally before the court is this: Does paragraph 1259 of the General Statutes of 1889 (Gen. Stat. 1897, ch. 70, § 18) require that a railroad company shall build cattle-guards where it enters and leaves enclosed premises, in case such land is fenced after the railroad is built? Said section reads as follows:

" When any railroad runs through any improved or fenced land, said railroad company shall make proper cattle-guards on such railroad when they enter and when they leave such improved or fenced land."

Counsel say that the word "when" in this section relates to the time, and is not equivalent to "where"; and that while the statute would require a railroad company to place cattle-guards at the points where its road enters and leaves a fenced tract, when the road is being built, it does not impose such duty where the land is fenced after the road is built. The section quoted was passed in 1869. The railroad track in question was constructed in 1871. Counsel say that the act of March 7, 1885, which requires railroads to fence their right of way under certain conditions therein named, supports this claim. They argue that fencing the right of way would make the building of cattle-guards unimportant to the owner of the land affected. As we understand the decisions of our supreme court, the question here raised is not an open one in this state. In the case of *Mo. Pac. Rly. Co. v. Morrow*, 32 Kan. 217, the evidence showed that the railroad was constructed in 1870 by the Missouri, Kan-

sas & Texas Railway Company, and that it was oper-
ated after 1881 by the Missouri Pacific company. At
the time the railroad was constructed the land occu-
pied by Morrow was unimproved and unfenced, and
was not fenced until April, 1882. The fence was built
on each side of the railroad up to the right of way,
where spaces were left for cattle-guards. Morrow
claimed damages for injuries done to his crops by cat-
tle passing along the right of way into his field and
upon his crops, and also for his time and labor in
keeping the cattle. away from his field by watching
the field and in building an additional fence. It was
contended that since the railroad company was oper-
ating the road under a lease it was not bound under
the statute to construct cattle-guards on its line of
road. The court, after quoting paragraph 1259, *supra*,
said :

"The defendant, plaintiff in error, also cites the
case of *St. L. W. & W. Rly. Co. v. Curl*, 28 Kan. 622,
as authority for their position. Now, it is generally
true, as decided in that case, that when a railway
company constructs a railway it is bound to construct
proper cattle-guards ; but this principle of law does
not apply to the present case ; for during all the time
that the Missouri, Kansas & Texas Railway Company,
the constructor of this railway, operated the same,
the land which now constitutes the plaintiff's field
was neither improved nor fenced. But whatever may
be the duty of a railway company constructing a rail-
way, we think it is always the duty of a railway
company operating the same to see that proper cattle-
guards exist wherever its railway enters or leaves im-
proved or fenced land ; and taking this view of the
case, it was the duty of the defendant to see that
proper cattle-guards were in existence where its rail-
way entered and left the plaintiff's field."

And in the syllabus of the case the court said :

"It is always the duty of a railway company oper-

ating a railroad to see that proper cattle-guards exist wherever its railroad enters or leaves improved or fenced land, whether such railway company owns the railroad or is simply operating it under a lease.''

In other cases the court has used language of similar import, from which it must be inferred that the construction it put upon paragraph 1259 is that it applies as well where the land is fenced after the road is built as 'where it was fenced at the time the road was built. The word ''when'' has the meaning of '' whenever '' in this connection, and the duty to place cattle-guards devolves on a railroad company whenever the line of railroad runs — that is, passes through — an enclosed field, without regard to when such enclosure was made. In the case of *C. K. & N. Rly. Co. v. Behney*, 48 Kan. 47, the court sustained a judgment in favor of the plaintiffs and against the railroad company where the damages alleged to have been sustained were exactly like those for which the recovery was had in this case. In *Nelson v. St. L. & S. F. Rly. Co.*, 49 Kan. 165, the decision in the Behney case was affirmed and a recovery of the same character sustained.

It is claimed by counsel for plaintiff in error that the findings of fact are in conflict with the general verdict. We have given this matter very careful attention and have concluded that the conflict is immaterial. While the verdict is for more than the cost of fencing the right of way and the value of the pasture which would have been thus lost, it is plain from the evidence that Billings was expecting, and had a right to expect, a speedy building of the cattle-guards. Under the doctrine of the two cases last cited, he was entitled to all the damages awarded him, and it is doubtful if the instruction of the court hereinbefore

mentioned, in reference to the claim that Billings ought to have built a fence along the right of way and thus prevented the alleged damage, was correct. The judgment of the district court is affirmed.